## S89A0456. JOHNSON v. JOHNSON.
(386 SE2d 136)

MARSHALL, Chief Justice.

In this case, the appellee, Merritt Johnson, Jr., filed a complaint for divorce against the appellant, Betty Ann Johnson. Following the trial court's entry of final judgment on the jury verdict, the appellant filed an application for discretionary appeal, which we granted.

Two issues present themselves for decision. One issue concerns the allocation of a joint and several personal-injury award into those portions of the award constituting individual assets and those portions constituting marital assets. See *Dees v. Dees,* 259 Ga. 177 (377 SE2d 845) (1989) and cits. The second issue concerns the liability for mortgages encumbering property titled in both parties' names and awarded by the jury to the appellant without any specification as to which party or parties would be liable for the mortgage indebtednesses. See *Aycock v. Aycock,* 251 Ga. 104 (2) (303 SE2d 456) (1983) and cits.; *Moon v. Moon,* 222 Ga. 650 (151 SE2d 714) (1966).

For reasons which follow, we reverse.

The parties were married in 1971, and they have two minor children. During the parties' marriage, the appellee has been actively employed while the appellant has been a homemaker.

The jury in its verdict divided the real and personal property of the parties, ordered the appellee to pay the debts scheduled in a bankruptcy action filed jointly by the parties prior to their separation, and awarded the appellant child support but no alimony.

The remaining facts will be stated in the divisions of the opinion addressing the respective enumerations of error.

1. (a) In February of 1986, the appellee was involved in a motor-vehicle collision with a Georgia Power Company truck. As a result, he was rendered comatose for approximately three weeks following the collision, and he remained totally disabled until October of 1986, when he returned to full-time employment.

The parties, as co-plaintiffs being represented by the same attorney, filed suit against Georgia Power in October of 1987— the appellant claiming loss of consortium, and the appellee asserting claims for medical expenses, loss of earnings, pain and suffering, and permanent disability.

Subsequent to filing the personal-injury action, the parties sepa-

rated. In March of 1987, the appellee instituted this divorce proceeding, being represented by the same attorney representing the parties in the pending tort suit against Georgia Power. As a result, the appellant filed a motion requesting that this attorney be disqualified from representing the appellee in this divorce suit. After this motion was filed, counsel voluntarily withdrew from his representation of the appellee herein.

After settlement negotiations, Georgia Power, in December of 1987, offered a "structured settlement," payable as follows: approximately $150,000 immediately payable to the appellant, the appellee, and their counsel as copayees; $25,000 payable solely to the appellee in five years; $50,000 payable solely to the appellee in 10 years; $75,000 payable solely to the appellee in 15 years; $200,000 payable solely to the appellee in 20 years; and $1,000 per month payable solely to the appellee for no less than 20 years and continuing thereafter throughout the appellee's life.

This settlement agreement thus encompasses a present lump-sum payment and assured future payments in the approximate amount of $750,000. The parties state that the present value of this combined lump-sum and annuity settlement is approximately $366,000.

In this settlement agreement, it is stated that in the underlying tort action the appellee herein was bringing suit against the defendants for personal injuries, and the appellant herein was suing for loss of consortium.

Although the appellee and counsel for the parties signed this settlement agreement in January of 1988, the appellant refused to sign the settlement agreement because of her objection to the agreement's designation of the recipients of the various monetary payments.

Pursuant to a motion filed by Georgia Power in the present suit, a check for $146,036, which the appellant refused to endorse, was paid into the court registry. This check represents the initial $150,000 payment under the settlement agreement, minus $3,063.63 in satisfaction of a lien for medical bills incurred by the appellee. In addition, counsel representing the parties in the tort suit filed a motion to have a $127,823.89 lien for an attorney's ⅓ contingency fee and other litigation expenses satisfied from this settlement amount.[1] This motion was granted, leaving $18,212.48 as the net sum remaining from the initial $150,000 jointly payable to the parties herein.

In ruling upon a motion in limine filed by the appellee, the trial

---

[1] This amount of this attorney-fee lien thus is based on a ⅓ percentage of the present value of the "structured settlement." However, the appellant states that the agreement entered into between the parties and their attorney in the tort suit does not specify whether or not the monetary amount ⅓ contingency fee should be based on the present value of the "structured settlement."

court held that since the document memorializing the settlement agreement expressly designates the appellant and the appellee as joint recipients of certain portions of the settlement — and since the document further identifies the appellee, in his sole capacity, as the sole recipient of the remaining amounts — in the trial of this case, the appellant would be permitted to assert a claim for equitable property division only against the net proceeds of the settlement amount paid to the parties jointly, i.e., $18,212.48.

In pertinent part, the jury in its verdict awarded 75% of the escrowed amount of $18,176.11 to the appellant and 25% to the appellee.

(b) In the case of *Campbell v. Campbell*, 255 Ga. 461 (339 SE2d 591) (1986), we recognized that where the parties to a marriage jointly bring suit for economic and noneconomic losses resulting from a personal injury to one of the parties during the marriage, the settlement of such claim is in part the separate property of the respective spouses and in part a marital asset subject to equitable division. There, we held:

> A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity, is peculiarly personal to the party who receives it. . . However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage. Any amount which is attributable to loss of consortium is not an asset of the marriage but is the estate of the spouse who suffered the loss of consortium. [255 Ga. at 462.]

The *Campbell* decision was reiterated in *Dees v. Dees*, 259 Ga. 177, supra.

The appellant here argues that after this divorce proceeding was instituted by the appellee, her participation in the personal-injury litigation was thwarted. However, she further contends that insofar as she was involved in litigating the personal-injury action, the parties were pursuing combined and undifferentiated claims, with a settlement being structured so as to minimize both the tax liability of the recipient and the cost of settlement incurred by the payor. Since the appellee had returned to full-time employment at the time of the parties' separation, the appellant argues that all amounts for lost wages and medical expenses constitute a marital asset.[2] Finally, the appel-

---

[2] In arguing that all sums paid as reimbursement for lost wages and medical expenses constitute a marital asset in that these expenses, as well as the appellee's disability, were of

lant maintains that psychological problems suffered by the appellee as a result of the accident were the precipitating cause of the divorce, and, therefore, her loss of consortium here is a permanent injury.

The appellant thus argues that although, under the facts of this case, she was a party to the personal-injury suit, she was not a party to the settlement. And notwithstanding the settlement's designation of the respective payees, the appellee contends that in this divorce proceeding, the allocation of individual and marital assets within the settlement, and the determination of the parties' respective entitlements to those payments constituting marital assets, are questions of fact for the trier of fact. We agree.

Both *Campbell* and *Dees* were appeals from findings by the trial court without the intervention of a jury. Both resulted in remands to the trier of fact for a determination of what portion of a joint and several personal-injury award was marital property subject to equitable division.

In this case, a jury was the finder of fact. And, in our opinion, the removal from the jury of the power to allocate assets of the magnitude of the settlement award casts serious doubt upon other aspects of the jury's verdict. Consequently, we hold that this case must be remanded for a new trial, consistent with our holdings in this opinion, on all questions of alimony, child support, and equitable division of real and personal property — the equitable property division including a division of the monies payable under the settlement of the parties' personal-injury claims, after deduction of the specified attorney fees and medical expenses.[3] See also *Friedman v. Friedman*, 259 Ga. 530 (384 SE2d 641) (1989) (fixing the date of the divorce as the *terminus ad quem* for the accretion of marital property).

2. During their marriage, the parties acquired two parcels of income-producing rental property encumbered by mortgages as to which the parties were jointly liable.

---

finite duration and terminated prior to the parties' divorce, the appellant implicitly takes the position that all remaining sums constitute compensation for pain and suffering experienced by the appellee and the loss of consortium suffered by the appellant.

[3] Thus the finder of fact must determine the portion of the award constituting compensation for pain and suffering and award such sums to the appellee. The finder of fact must also determine the portion of the award constituting compensation for loss of consortium and award such sums to the appellant. And, the finder of fact must determine the portion of the award constituting compensation for lost wages and medical expenses, and divide those sums in an equitable manner under the facts and circumstances of this case.

The correctness of the ruling of the trial court allowing the attorney's 1/3 contingency fee lien to be satisfied from the $150,000 lump-sum payment is not before us in this appeal. However, we do note that satisfaction of this lien in this manner is certainly relevant to the fact finder's determination of how the portion of the settlement constituting marital assets should be equitably divided, as well as to how the portion of the settlement representing compensation to the appellant for loss of consortium should be paid.

In January of 1987, the parties filed a joint petition for bankruptcy under what is referred to as a "Chapter 13 Wage Earner's plan."

The jury in its verdict made the appellee liable for the scheduled debts in the bankruptcy proceeding. And the jury in its verdict awarded the income-producing properties to the appellant, without making any specification concerning the parties' respective liabilities for the mortgage payments. Nonetheless, the trial court included in the final judgment a provision holding the wife solely liable for these mortgages.

On appeal, the appellant, citing a line of cases originating with *Moon v. Moon*, supra, argues that the trial court was not authorized to include this provision in the final judgment. See also *Aycock v. Aycock*, 251 Ga. 104, supra; *Thompson v. Thompson*, 243 Ga. 719 (256 SE2d 454) (1979); *Ramsey v. Ramsey*, 231 Ga. 334 (2) (201 SE2d 429) (1973). Relying upon the same line of cases, the appellee argues otherwise.[4]

Since, however, there must be a new trial in any event, we need not resolve these arguments.[5]

We point out, however, the persistent danger of failing to examine jury verdicts, *at publication*, with an eye to clarifying to exact-

---

[4] In *Moon*, it was held that where the wife was awarded property titled in the husband's name and encumbered by a mortgage, without there being any provision as to payment of the mortgage in the jury verdict, it was the intent of the jury, under the evidence, to award the property to the wife subject to the mortgage with each party being liable for ½ of this indebtedness.

In *Thompson*, it was held that where the jury awarded a jointly-titled marital residence to the wife, without making any provision as to the parties' liability for payment of the mortgage, the trial court erred in molding a final judgment which relieved the husband of his joint liability for mortgage payments.

In *Ramsey*, it was held that where, as in the situations noted above, the decree was silent on the question of who should be liable for a mortgage, contempt was not an available means of enforcing a party's liability to make mortgage payments.

In *Aycock*, it was held that where the jury verdict provided that two rental properties in which the husband owned a ½ interest be placed in trust in order to fund child-support payments to be made by the husband, and where payment of the mortgage indebtedness and other expenses on the property was necessary before virtually any net income was realized, it was the intent of the jury that the husband pay his proportionate share of the mortgage and other expenses.

[5] In addition, the appellant argues that there was no evidence of any mortgage indebtedness presented at trial, and the appellant further argues that the appellee testified inaccurately that all marital debts were scheduled in the bankruptcy proceeding. Since the jury in its verdict made the appellee liable for all such debts, the appellant contends that it was thus the intention of the jury that the appellee be liable for these mortgages as marital debts.

However, our review of the record indicates that the subject mortgages were listed as claims of secured creditors in the parties' bankruptcy plan; thus, if this bankruptcy plan was confirmed, the appellee is required to remit to the bankruptcy trustee sufficient funds from his future earnings to enable the trustee to make periodic disbursements in payment of these mortgage indebtednesses.

itude the intention of the jury as to payment of obligations that are outstanding as to assets allocated by the verdict, as well as any other term of the verdict that is unclear. "We have suggested on several occasions that jury verdicts that include inappropriate terms or ambiguities be resubmitted for amendment or clarification." *Stone v. Stone*, 258 Ga. 716, 717 (n. 1) (373 SE2d 627) (1988). A modicum of care *before* the jury is dispersed can diminish the anguish of appeal and the debilitation of retrial.

*Judgment reversed. All the Justices concur.*

DECIDED DECEMBER 5, 1989.

*Sinnreich & Francisco, Elizabeth R. Francisco,* for appellant.
*Bennett T. Willis, Jr.,* for appellee.